**Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000387
30-JAN-2015
08:14 AM**

NO. CAAP-12-0000387

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

KEVIN P. MCELROY, Appellant-Appellant, v.
PACIFIC LIGHTNET, INC., AND DEPARTMENT OF
LABOR AND INDUSTRIAL RELATIONS, Appellees-Appellees

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 11-1-0410-02)

SUMMARY DISPOSITION ORDER
(By:  Nakamura, Chief Judge, Fujise and Leonard, JJ.)

Claimant-Appellant Kevin P. McElroy (**McElroy**) appeals from the Order Affirming Employment Security Appeals Referee's Decision, filed on March 13, 2012 (**Order**) and the Final Judgment filed on March 13, 2012 (**Judgment**) in the Circuit Court of the First Circuit (**Circuit Court**).[1]  The Circuit Court's Judgment and Order affirmed the decision of the Department of Labor and Industrial Relations (**DLIR**), Employment Security Appeals Referees' Office (**ESARO**), filed January 27, 2011, which in turn affirmed the December 20, 2010 decision of the Unemployment Insurance Division finding that McElroy was not entitled to unemployment benefits because he left his job with Employer-Appellant Pacific Lightnet, Inc. (**Lightnet**) "without good cause."

On appeal, McElroy contends that the Circuit Court erred in affirming the agency decision because the DLIR ESARO

_____

[1]  Honorable Rhonda A. Nishimura presided.

appeals officer erred in concluding that McElroy voluntarily left employment without good cause.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve McElroy's point of error as follows:

Hawaii Revised Statutes (**HRS**) § 383-30 (1993) outlines the circumstances that disqualify an individual from receiving unemployment benefits. HRS § 383-30(1) provides:

> An individual shall be disqualified for benefits:
>
> (1) Voluntary separation. . . . For any week beginning on and after October 1, 1989, *in which the individual has left the individual's work voluntarily without good cause*, and continuing until the individual has, subsequent to the week in which the voluntary separation occurred, been paid wages in covered employment equal to not less than five times the individual's weekly benefit amount as determined under section 383-22(b).

(Emphasis added). Implementing the provisions of HRS § 383-30(1) is Hawaii Administrative Rules (**HAR**) § 12-5-47: Voluntary Separation, which states in relevant part:

> (a) An individual shall be disqualified for benefits for voluntarily leaving work without good cause.
>
> (b) A separation is a voluntary leaving or quitting when the facts and circumstances demonstrate that a claimant is the "moving party" in the termination of an employment relationship.
>
> (c) Generally, a leaving of work is considered to be for good cause where it is for a real, substantial, or compelling reason, or a reason which would cause a reasonable and prudent worker, genuinely and sincerely desirous of maintaining employment, to take similar action. Such a worker is expected to try reasonable alternatives before terminating the employment relationship.
>
> Good cause for leaving employment may be found where there is:
>
>> (1) Change in working conditions and the change is prejudicial or detrimental to the health, safety, or morals of the individual;
>>
>> (2) Change in terms and conditions of employment, including, but not limited to: change in rate of pay, position or grade, duties, days of work, or hours of work;
>>
>> (3) Discrimination which violates federal or state laws regarding equal employment opportunity practices;

(4) Change in the individual's marital or domestic status;

(5) Acceptance of a definite, firm offer made of other employment where the offer is subsequently withdrawn and the former employer refuses to rehire the individual;

(6) Retirement under a mandatory requirement imposed by a collective bargaining agreement;

(7) Evidence that the individual was a victim of domestic or sexual violence . . . ; or

(8) Any other factor relevant to a determination of good cause.

The voluntariness of the employee's leaving and whether the employee left for good cause are two different prongs that are analyzed separately. Ipsen v. Akiba, 80 Hawai'i 481, 486, 911 P.2d 116, 121 (App. 1996).

On appeal, McElroy argues that because his unemployment was due to Lightnet's refusal to reinstate him, he is not the "moving party" within the meaning of HAR § 12-5-47(b). Thus, he argues, he did not leave his job with Lightnet voluntarily. McElroy failed to raise this argument in the proceedings below, and his previous position was apparently that his departure from Lightnet was voluntary. During the January 25, 2011 hearing before the appeals officer, McElroy's counsel gave an opening statement wherein he took the position that: "This was a voluntary separation from employment for good cause as defined under [HAR § 12-5-47(c)(5)]." McElroy's opening brief to the Circuit Court on appeal from the appeals officer's decision read: "The issue is whether McElroy's voluntary leaving work for the Employer was for good cause." Accordingly, this argument is waived. See, e.g., Onaka v. Onaka, 112 Hawai'i 374, 386, 146 P.3d 89, 101 (2006) ("[T]he rule in this jurisdiction . . . prohibits an appellant from complaining for the first time on appeal of error to which he has acquiesced or to which he failed to object.") (citations omitted).

Turning to the issue of good cause, HAR § 12-5-47(c)(5) provides that "[g]ood cause for leaving employment may be found where there is: . . . . Acceptance of a definite, firm offer made

of other employment where the offer is subsequently withdrawn and the former employer refuses to rehire the individual[.]" Here, the appeals officer did not specifically determine whether McElroy's offer from Hawaiian Telcom was firm or definite, but she did find that "although claimant was given a verbal offer of employment, which he considered an official offer, claimant was also told, that day, that the offer was pending a background check."

This finding is supported by McElroy's testimony that when he spoke to Hawaiian Telcom's hiring manager, Julian Raposa (**Raposa**) on September 16, 2010, before receiving the verbal offer, Raposa "said at that time that the offer - it would be pending of their background center[.]" This echoes his statement during the claims examiner's fact finding interview that before getting the "official verbal offer", "[Raposa] told me that I still needed to get this offer officially processed and he did tell me that there is a drug test and background test pending." The letter sent to McElroy after the verbal offer makes clear that "this offer may be withdrawn or your employment may be terminated if information that you provided in connection with your application is determined by the Company to be false, inaccurate, or misleading." This offer "was the same as the verbal offer" according to McElroy. Additionally, the letter stated that it would supersede any prior "promises, representations and agreements." Finally, Hawaiian Telcom's representative told the claims examiner that McElroy's offer was contingent on a background check and the offer was rescinded when the background check revealed that he had falsified information.

McElroy argues that "a contingency in an offer does not render it indefinite or infirm" under HAR § 12-5-47(c)(5). We disagree. "Firm" is defined as "not subject to change, revision, or withdrawal." Webster's Third New Int'l Dictionary 856 (1981) "Definite" is defined as "marked by absence of the ambiguous, obscure, doubtful, or tentative . . . . " Id. at 592. As the offer in this case was contingent on the passing of a background check and subject to withdrawal pending the results of the check,

it was thus not "firm" or "definite" based on the ordinary meaning of these words. <u>See</u> <u>also</u>, <u>e.g.</u>, <u>Sanchez v. Unemp't. Comp. Bd. of Review</u>, No. 821 C.D. 2013, 2013 WL 6122376 at *3 (Pa. Commw. Ct. Nov. 20, 2013) ("[Employer's] failure to hire Claimant because of his driving record indicates that the offer of employment was conditional rather than firm."), <u>Davis v. Unemp't. Comp. Bd. of Review</u>, No. 1411 C.D. 2007, 2008 WL 9398689 at *2 (Pa. Commw. Ct. Apr. 24, 2008) ("[Employer's] offer, by its terms, was conditioned on the premise that Claimant had not provided false information in his application and depended on Claimant passing a background check; therefore, it was a conditional offer, not a firm offer."), <u>Breslow v. Commonwealth Unemp't. Comp. Bd. of Review</u>, 517 A.2d 590, 593 (Pa. Commw. Ct. 1986) (Where the claimant's job offer was rescinded after she failed an insurance aptitude test, "Claimant did not have a firm job offer, but simply a conditional offer which Claimant knew had been rescinded before her termination date.")

Finally, the appeals officer did not clearly err when she found that McElroy "failed to try reasonable alternatives to maintain employment, as required under Section 12-5-47(c), HAR, [thus] claimant fails to meet the standard of good cause for leaving employment, under Section 12-5-47, HAR." While HAR § 12-5-47(c)(1)-(8) lists circumstances under which good cause for leaving employment may be found, part of the "good cause" test under HAR § 12-5-47(c) is whether the claimant "tr[ied] reasonable alternatives before terminating the employment relationship." <u>Ipsen</u>, 80 Hawai'i at 489-90, 911 P.2d at 124-25; <u>see</u> <u>also</u> <u>Noor v. Agsalud</u>, 2 Haw. App. 560, 563, 634 P.2d 1058, 1060 (1981). Thus, following <u>Ipsen</u>, when an employee fails to try reasonable alternatives before leaving employment, the "good cause" test is not met even though the employee may have otherwise had a valid reason for leaving.

Here, the appeals officer found that it was not credible that McElroy inadvertently erred in claiming that he had a college degree, and thus he "should have been aware that the background check [might] uncover that the information in his

5

application was false and [might] affect any job offer he was given."  As the appeals officer further noted:

> Instead of submitting a notice of resignation, before the background check was completed, claimant could have easily asked the hiring company if he could wait on submitting a notice of resignation to the subject employer, and possibly delay his start date, until he cleared his background check. There is insufficient evidence to find that the hiring company would have refused claimant's request to delay his work start date until the background check was completed.

Notwithstanding McElroy's contention that "[h]ad he waited for the completion of the background check on September 24 to give his notice[,] Employer would have only had eleven days notice of his termination[,]" he could have asked to delay his start date in order to ensure that he passed the background check and give timely notice to Lightnet.[2]  Further, in response to the claims examiner's question – "was [McElroy] required to accept the start date of 10/4/10, or could he have waited until the background check was completed and would [the] job have been available later?" – the Hawaiian Telcom representative stated: "He didn't have to accept the position at that time.  The job would have still been available until the point in time that his background check came back."  Finally, McElroy was not entitled to rely on Raposa's assurance to "go ahead" and tender a letter of resignation where McElroy knew he had falsified information on his application and knew or should have known that a background check could uncover it.  Thus, despite McElroy's contention that he acted reasonably with respect to leaving his employment with Lightnet, based on the reliable, probative, and substantial evidence on the record, the appeals officer's conclusion that McElroy "failed to try reasonable alternatives to maintain employment" and thus left without good cause was not clearly erroneous.

---

[2]      Also, according to Lightnet's head of business operations, McElroy was not required to give a two week notice.

Accordingly, the Circuit Court's March 13, 2012 Order and Judgment are affirmed.

DATED: Honolulu, Hawaiʻi, January 30, 2015.

On the briefs:

Charles H. Brower
for Appellant-Appellant

John S. Mackey
(Torkildson, Katz, Moore,
 Hetherington & Harris)
for Appellee-Appellee
PACIFIC LIGHTNET, INC.

Chief Judge

Associate Judge

Associate Judge